### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Nicole Reale, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action: 3:24-cv-547 |
| | § | |
| | § | With Jury Demand Endorsed |
| Equifax Information Services LLC**,** | § | |
| Experian Information Solutions, Inc., | § | |
| Trans Union LLC, and Nationstar Mortgage | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

## **COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Nicole Reale ("Plaintiff"), by and through counsel, for her Complaint against Defendants, Equifax Information Services LLC**,** Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, states as follows:

### I.  INTRODUCTION

1.      Three of the Defendants are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and Defendant, Nationstar Mortgage LLC is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2.      Plaintiff, Nicole Reale, is a natural person residing in Powhatan County, Virgina, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c), and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3.      Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4.      Upon information and belief, Defendant Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," or "CRA Defendant," or "CRA Defendants," is an Ohio corporation that does business in this judicial district and may be served by delivering a summons to its headquarters, 475 Anton Blvd., Costa Mesa, California 92626. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to

third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5.     Upon information and belief, Defendant Trans Union LLC, which may also hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6.     Upon information and belief, Defendant Nationstar Mortgage LLC or Mr. Cooper, which may also hereinafter be referred to as "Nationstar," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a Delaware limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 8950 Cypress Waters Blvd., Coppell, Texas 75019. Nationstar is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7.     As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on

consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs specifically include, but are not limited to, Equifax, Experian, and TransUnion.

### III. JURISDICTION AND VENUE

8.     Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arises under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9.     Venue is proper in this District, because CRA Defendants and Nationstar transact business in this District. Nationstar's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Northern District of Texas as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because CRA Defendants entered into agreements with Nationstar in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's dispute(s) sent from the CRA Defendants as part of their reinvestigation was submitted to Nationstar's headquarters and investigated by the furnisher Nationstar using Nationstar's resources located at or closely connected to this judicial district.

Nationstar managed Plaintiff's mortgage from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV.  FACTUAL ALLEGATIONS

11.     Upon information and belief, in or around August 2012 Plaintiff secured a mortgage for her property located at 7414 Newbys Court Chesterfield, VA 23832.

12.     Sometime thereafter, Nationstar Mortgage LLC acquired Plaintiff's mortgage loan and assigned loan number 672515xxxx, hereinafter ("Nationstar mortgage account").

13.     On August 18, 2020, Plaintiff filed for a Chapter 13 bankruptcy. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report is attached hereto as Exhibit "A".

14.     On April 4, 2022, Plaintiff Chapter 13 payment plan was confirmed. See Exhibit "A".

15.     Sometime before discharge, Plaintiff's property was sold and Nationstar mortgage loan closed. See Exhibit "A".

16.     On November 1, 2022, Plaintiff, Nicole Reale, was discharged from her chapter 13 bankruptcy. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Discharge Order is attached hereto as Exhibit "B".

17.     Read in concert, Sections 1322(a)(2), 1322(b)(5), and 1328(a)(1) of the Bankruptcy Code, bar discharging home mortgage debts in a Chapter 13 Bankruptcy.

18.     On December 14, 2022, Suzanne E. Wade, Trustee for Plaintiff's Chapter 13 Bankruptcy filed a Chapter 13 Standing Trustee's Final Report and Account. A redacted copy of Plaintiff's Chapter 13 Bankruptcy Trustee's Final Report and Account is attached hereto as Exhibit

"C".

19.     On or around December 15, 2022, Plaintiff's Chapter 13 Bankruptcy was terminated. *See* Exhibit "A".

20.     Throughout Plaintiff's Chapter 13 Bankruptcy, under direct or indirect order from the bankruptcy Trustee, timely monthly mortgage payments were made to the Nationstar mortgage account.

21.     Sometime in August 2023, Plaintiff obtained her three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report were not accurate. A redacted copy of Plaintiff's three-bureau credit report is attached hereto as Exhibit "D".

22.     Plaintiff noticed that Defendant Equifax reported a payment status as "Late 60 Days" for April 2021, which is incorrect. The payments should not be reporting as late because of Plaintiff's chapter 13 bankruptcy filing.[1]

23.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment

---

[1] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

24.     Plaintiff noticed that Defendants Experian reported a payment status as "Late 60 Days", for April 2021 which is incorrect. The payments should not be reporting as late because of Plaintiff's chapter 13 bankruptcy filing.[2]

25.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

26.     Plaintiff noticed that Defendants Trans Union reported a payment status as "Late 60 Days" for April 2021 which is incorrect. The payments should not be reporting as late because of

---

[2] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

Plaintiff's chapter 13 bankruptcy filing.[3]

27.     Metro 2 guidelines require furnishers and CRAs to update the reporting of an account when the borrower associated to the account filed chapter 13 bankruptcy by first updating the Consumer Information Indicator ("CII") to "D", and then continuing to furnish the monthly payment history information with a value of "D". Metro 2 guidelines further require furnishers and CRAs to update the reporting of an account when the borrower associated to the account is discharged from chapter 13 bankruptcy by updating the CII to "Q". In following these simple Metro 2 guidelines, which are well regarded as the industry standards, it prevents the reporting of any late payment history during the pendency of a consumer's chapter 13 Bankruptcy, and allows payments made by the consumer after the chapter 13 bankruptcy is discharged to be reported. Metro 2 guidelines are followed by both furnishers and CRAs.

28.     In or around September 2023, Plaintiff sent direct disputes to Equifax, Experian, and Trans Union, and requested that the CRA Defendants investigate the reporting of the Nationstar mortgage account. Plaintiff requested that under the FCRA, each CRA Defendant conduct a reasonable investigation and/or remedy the inaccuracies on Plaintiff's credit reports concerning the Nationstar mortgage account. Within these dispute letters, Plaintiff described in great detail the issues and the misreporting following her bankruptcy and enclosed copies of either her bankruptcy docket report, trustee final report, and/or discharge order. Redacted copies of Plaintiff's unsigned dispute letters sent to Equifax, Experian, and Trans Union, are attached hereto as Exhibits "E", "F",

---

[3] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to have suppression codes associated with bankruptcy reporting accounts after the petition is filed, so that the ongoing payments history for the consumer's will not be reported.

and "G" respectively.

29.     Equifax received Plaintiff's Dispute on September 12, 2023. A redacted copy of the

Certified Mail Receipt and Proof of Delivery for Plaintiff's Equifax Dispute Letter is attached hereto

as Exhibit "H".

30.     Upon information and belief, Equifax did not respond to Plaintiff's September 8,

2023, dispute.

31.     Plaintiff then obtained an updated copy of her Three-bureau credit report on October

26, 2023, and within the Equifax credit report Plaintiff noticed that the Nationstar tradeline removed

the disputed late payment but now reported the Nationstar account without the correct update that

indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a

wage earner plan and with references to the Chapter 13 Bankruptcy. This was inaccurate because

Plaintiff complied with the terms of the chapter 13 bankruptcy plan, the loan was excepted from a

discharge before it was paid in full, and Plaintiff was successfully discharged. Therefore, any

remarks and/or references to and/or suppression information related to Plaintiff's chapter 13

bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy

was discharged. [4] A redacted copy of Plaintiff's October 26, 2023, Three-bureau Credit Report is

attached hereto as Exhibit "I".

32.     In or around November 2023, Plaintiff sent a *second* dispute letter to Equifax

notifying it of the inaccuracies in the October 26, 2023, credit report.  A redacted copy of Plaintiff'

---

[4] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct
consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting
for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the
consumer can be reported.

second dispute letter to Equifax is attached here to as exhibit "J".

33.    On December 1, 2023, Equifax responded to Plaintiff that "WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY." However, under "Status" it reported "Included in Wage Earner Mortgage Plan" and under "ADDITONAL INFORMATION:" it stated, "Bankruptcy Chapter 13". A redacted copy of Equifax's Response to Plaintiff's December 1, 2023, dispute is attached hereto as Exhibit "K".

34.    On or about December 27, 2023, Plaintiff pulled a third credit report which revealed that Equifax had not corrected any of the inaccuracies from the October 2023 report. (See Exhibit I) A redacted copy of the December 27, 2023, credit report is attached as exhibit "L".

35.    Equifax's responses, or lack thereof, were not the result of a reasonable investigation into Plaintiff's dispute(s) and failed to remedy the inaccuracies within the Nationstar tradeline and gave no explanation as to why it failed to sufficiently update the Nationstar Mortgage tradeline when Plaintiff filed chapter 13 bankruptcy, complied with the requirements of the chapter 13 bankruptcy plan, sold the property, satisfied the loan, and was successfully discharged.

36.    Equifax's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines. Plaintiff sent very clear disputes, and though Equifax made some changes, the revisions still revealed inaccurate information.

37.    Plaintiff sent a very clear dispute, and yet Equifax failed to make all needed changes to the disputed information, bankruptcy status, and/or account status.

38.    Equifax chose to "verify" false information from an unreliable source, failed to

correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

39.     Upon the Plaintiff's request to Equifax for verification and addition regarding the Nationstar mortgage account, and in accordance with Equifax's standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence. Further, Equifax did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

40.     In the alternative, and in accordance with Equifax's standard procedures, Equifax failed to contact Nationstar, therefore, failed to perform any investigation at all.

41.     In the alternative to the allegation that Equifax failed to contact Nationstar, it is alleged that Equifax did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

42.     Experian received Plaintiff's dispute and on September 19, 2023, responded that "[t]he items you disputed has been updated, which may include an update to the disputed information."  Plaintiff noticed that Experian removed the late payment but now under "Status" Experian reported "Petition for Chapter 13 Bankruptcy" and the tradeline was listed in the negative account section. A redacted copy of Experian's response is attached hereto as Exhibit "M".

43.     Plaintiff then obtained an updated copy of her three-bureau credit report (See exhibit I) and within the Experian credit report Plaintiff confirmed that the late payment was not gone but observed that Experian reported the Nationstar account without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as potentially discharged through bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. This was inaccurate because Plaintiff complied with the terms of the chapter 13

bankruptcy plan, the loan was excepted from a discharge before it was paid in full, and Plaintiff was successfully discharged. Therefore, any remarks and/or references to and/or suppression information related to Plaintiff's chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [5]

44.     On or about November 6, 2023, Plaintiff sent a *second* dispute letter to Experian notifying it of the inaccuracies in the October 26, 2023, credit report. A redacted copy of Plaintiff's second dispute letter is attached here to as exhibit "N."

45.     On December 2, 2023, Experian responded "NATIONSTAR MORTGAGE 67251…. Outcome: Verified and Updated – The information you disputed has been verified as accurate, however information unrelated to your dispute has been updated."  Notably, Plaintiff noticed that Experian continued to report the same inaccuracies as before. A redacted copy of Experian's response to Plaintiff's November 6, 2023, Dispute Letter is attached as Exhibit "O."

46.     On or about December 27, 2023, Plaintiff pulled a third credit report (See Exhibit L) which further confirmed that Experian had not repaired any of the inaccuracies from the October 2023 report. (See Exhibit I)

47.     Experian's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines. Plaintiff sent very clear disputes, and though Experian made some changes, the modifications still reported

---

[5] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

inaccurate information.

48.     Plaintiff sent very clear disputes, and yet Experian failed to make all needed changes to the disputed information, bankruptcy status, and/or account status.

49.     Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

50.     Upon the Plaintiff's request to Experian for verification and addition regarding the Nationstar mortgage account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence. Further, Experian did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

51.     Experian forwarded some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

52.     Trans Union received Plaintiff's dispute and on September 22, 2023, responded by letter. Within Trans Union's response, they removed the disputed late payment but now reported under "Pay Status" reported ">Account Included in Bankruptcy<", and under "Remarks" reported ">CHAPTER 13 BANKRUPTCY<". A redacted copy of Trans Union's Response to Plaintiff's September 8, 2023, Dispute Letter is attached hereto as Exhibit "P".

53.     Plaintiff then obtained an updated copy of her three-bureau credit report (See exhibit I) and within the Trans Union credit report, Plaintiff confirmed that they did remove the late payment but now reported the Nationstar tradeline without the correct update that indicated that this secured debt was no longer part of the bankruptcy, as derogatory, as being in a wage earner plan and with references to the Chapter 13 Bankruptcy. This was inaccurate because Plaintiff complied

with the terms of the chapter 13 bankruptcy plan, the loan was excepted from a discharge before it was paid in full, and Plaintiff was successfully discharged. Therefore, any remarks and/or references to and/or suppression information related to Plaintiff's chapter 13 bankruptcy should have been removed from the Nationstar Mortgage tradelines after the Bankruptcy was discharged. [6]

54.     On or about November 6, 2023, Plaintiff sent a *second* dispute letter to Trans Union notifying it of the inaccuracies in the October 26, 2023, credit report. On December 6, 2023, Trans Union responded "[w]e investigated the information you disputed, and the disputed information was VERIFIED AS ACCURATE; however, we updated: DATE UPDATED; PAY STATUS; RATING. Notably, Trans Union continued to report the same inaccuracies. A redacted copy of Trans Union's response letter to Plaintiff's November 6, 2023, dispute is attached as exhibit "Q."

55.     On or about December 27, 2023, Plaintiff pulled a third credit report (See exhibit L) which further confirmed that Trans Union continued to report the same inaccuracies.

56.     Trans Union's responses were not the result of reasonable investigations into Plaintiff's dispute(s) for they did not adequately evaluate or consider Plaintiff's information, claims, or evidence and failed to remedy the inaccuracies within the Nationstar Mortgage tradelines. Plaintiff sent very clear disputes, and though Trans Union made some changes, the modifications still reported inaccurate information.

57.     Plaintiff sent very clear disputes, and yet Trans Union failed to make all needed changes to the disputed information, bankruptcy status, and/or account status.

---

[6] The Consumer Data Industry Association's Metro 2 reporting standards specifically instruct consumer reporting agencies to remove any suppression codes associated with bankruptcy reporting for an account once the chapter 13 bankruptcy is discharged so that ongoing payments made by the consumer can be reported.

58.    Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Nationstar account.

59.    Upon the Plaintiff's request to Trans Union for verification and addition regarding the Nationstar mortgage account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence. Further, Trans Union did not make any attempt to substantially or reasonably verify the Nationstar Mortgage account.

60.    Trans Union did forward some notice of the dispute to Nationstar, and Nationstar failed to conduct a lawful investigation.

61.    In or around September 2023, Plaintiff also sent Nationstar a direct dispute letter and attached as copies all of the dispute letters she sent to the CRAs to make Nationstar aware of the disputed issues. A redacted copy of the unsigned direct dispute sent to Nationstar without the copies of the CRA dispute letters is attached hereto as Exhibit "R".

62.    On September 20, 2023, Nationstar sent Plaintiff a letter confirming that they received Experian's inquiry on September 15, 2023 and claimed to respond to Experian on September 19, 2023, and "they will be providing you with a final resolution notice regarding this inquiry". A redacted copy of Nationstar's Letter to Plaintiff Concerning the Experian Inquiry is attached hereto as Exhibit "S".

63.    In the same letter referenced in the above paragraph , Nationstar confirmed receipt of Trans Union's inquiry on September 21, 2023 and, again, advised that Trans Union "will be providing you with a final resolution notice regarding this inquiry".

64.     On or about November 6, 2023, Plaintiff sent a *second* direct dispute letter to Nationstar notifying it of the inaccuracies in the October 26, 2023, credit report. A redacted copy of Plaintiff's second dispute letter is attached here to as exhibit "T."

65.     On December 19, 2023, Nationstar responded to Plaintiff's second dispute letter that We conducted an investigation and, after reviewing your account and pay history, found no errors in your credit history. A redacted copy of Nationstar's December 19, 2023, response is attached hereto as Exhibit "U".

## V.  GROUNDS FOR RELIEF

### COUNT I – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

66.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

67.     Equifax violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

68.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

69.     Plaintiff furnished Equifax the necessary documentation supporting Plaintiff's tradeline, yet Equifax continued to prepare a patently false consumer report concerning Plaintiff.

70.     Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting

Plaintiff, and ultimately Plaintiff's creditworthiness.

71.     After Equifax knew or should have known Plaintiff's account status in relation to her bankruptcy was inaccurate, they failed to make the corrections.

72.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

73.     Equifax's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

74.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT II – EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

75.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

76.     Equifax violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

77.     As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages,

including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a worthy credit history, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

78.     Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

79.     The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT III – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. § 1681e(b))

80.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

81.     Experian violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

82.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

83.     Plaintiff furnished Experian the necessary documentation supporting Plaintiff's tradeline, yet Experian continued to prepare a patently false consumer report concerning Plaintiff.

84.     Despite actual and implied knowledge that Plaintiff's credit reports were and are not

accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

85.     After Experian knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

86.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

87.     Experian's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

88.     The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT IV – EXPERIAN'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

89.     The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

90.     Experian violated §1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies; failing to conduct a lawful reinvestigation; failing to forward all relevant information to furnisher(s); and failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

91.     As a result of Experian's conduct, action, and inaction, the Plaintiff suffered

damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

92.    Experian's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

93.    The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT V – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

94.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

95.    Trans Union violated 15 U.S.C. § 168le(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

96.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible **accuracy** of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

97.    Plaintiff furnished Trans Union the necessary documentation supporting Plaintiff's tradeline.  Yet Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

98.   Despite actual and implied knowledge that Plaintiff's credit reports were and are not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

99.   After Trans Union knew or should have known Plaintiff's account status in relation to his bankruptcy was inaccurate, they failed to make the corrections.

100.   As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, denial in attempts to refinance, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

101.   Trans Union's conduct, action, and inaction, were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction, were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

102.   The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

## COUNT VI – TRANS UNION'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681i)

103.   The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

104.   Trans Union violated § 1681i by failing to update inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit

files, and relying upon verification from a source it has reason to know is unreliable.

105.    As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

106.    Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

107.    The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

### COUNT VII – NATIONSTAR'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681s-2(b))

108.    The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

109.    Defendant Nationstar violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

110.    Nationstar further violated 15 U.S.C. § 1681s-2(b) by continuing to report the Nationstar representation within Plaintiff's credit files with the CRA Defendants without also including a notation that this debt was disputed, failing to fully and properly investigate the Plaintiff's dispute(s) of the Nationstar representation, failing to accurately respond to the CRA

Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Nationstar representations to the consumer reporting agencies.

111.    As a result of Nationstar's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to, loss in ability to finance goods, loss of credit, loss of the ability to purchase and benefit from a credit, and suffering the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

112.    Nationstar's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI.  VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

113.    Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondeat superior and/or vicarious liability.

## VII. DAMAGES

114.    Plaintiff respectfully requests that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Texas.

115.     Plaintiff respectfully requests that this Honorable Court award Plaintiff her litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA, and/or other applicable laws.

116.     The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

117.     Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reporting about the Plaintiff and have been a substantial factor in causing credit denials and other damages.

118.     Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

119.     Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

120.     Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, attorney's fees, and court costs, and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff, Nicole Reale, prays that this Honorable Court:

A.      Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Nationstar Mortgage LLC, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing their credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B.      Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D.      Order that the CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Nationstar Mortgage LLC, work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.


Date Filed: March 6, 2024


                              Respectfully submitted,

*/s/ Matthew P. Forsberg*
Matthew P. Forsberg
TX State Bar No. 24082581
Matt@FieldsLaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 383-1868 (telephone)
(612) 370-4256 (fax)

**LAW OFFICE OF JONATHAN A. HEEPS**

*/s/ Jonathan A. Heeps*
Jonathan A. Heeps
TX State Bar No. 24074387
*Of Counsel to* FIELDS LAW FIRM
Post Office Box 174372
Arlington, Texas 76003
Telephone (682) 738-6415
Fax (844) 738-6416
jaheeps@heepslaw.com


COUNSEL FOR PLAINTIFF

## <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

<u>/s/ Matthew P. Forsberg</u>

Date: March 6, 2024

Matthew P. Forsberg